IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF SOUTH CAROLINA

| | |
|---|---|
| Bobby Joe Barton, #2163629, | ) CIVIL ACTION NO. 9:12-2151-RBH-BM |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) **REPORT AND RECOMMENDATION** |
| | ) |
| Thomas Moore, MD, Medical Director of | ) |
| SCDC and William Byars, Jr., Director of | ) |
| South Carolina Dept. Of Corrections, | ) |
| individually and official capacity, a/k/a | ) |
| Bill Byars, Jr., | ) |
| | ) |
| Defendants. | ) |
| _____ | ) |

This action has been filed by the Plaintiff, pro se, pursuant to 42 U.S.C. § 1983.

Plaintiff, an inmate with the South Carolina Department of Corrections (SCDC), alleges violations

of his constitutional rights by the named Defendants.

The Defendants filed a motion for summary judgment pursuant to Rule 56,

Fed.R.Civ.P., on January 9, 2013. As the Plaintiff is proceeding pro se, a Roseboro order was entered

by the Court on January 11, 2013, advising Plaintiff of the importance of a motion for summary

judgment and of the need for him to file an adequate response. Plaintiff was specifically advised that

if he failed to respond adequately, the Defendants' motion may be granted, thereby ending his case.

After receiving an extension of time, Plaintiff filed memoranda in opposition to the Defendants'

motion on February 27, 2013.



Defendants' motion is now before the Court for disposition.[1]

## **Background and Evidence**

Plaintiff alleges in his verified Complaint[2] that from August 4, 2009 through August 13, 2010, he was a detainee in the Greenville County Detention Center, where he was treated for diabetes, a right knee injury, and other ailments.  Plaintiff alleges that he was transferred to the Kirkland Correctional Institution (part of the SCDC system) on August 13, 2010, for "receiving and evaluation".  Plaintiff alleges that on September 15, 2010, he was examined by the Defendant Dr. Moore.  Plaintiff alleges that Dr. Moore told him that he would "never get any approval for any requests that would come across his desk", apparently because Dr. Moore was putting pressure on Plaintiff's right knee and did not believe the extent of the injury claimed.  Plaintiff alleges that he was "startled" by Dr. Moore's comments.  Plaintiff alleges that he remained at Kirkland through November 8, 2010, and that (apparently notwithstanding Dr. Moore's comment) he was treated for his diabetes and right knee injury.

Plaintiff alleges that November 8, 2010 he was transferred to the Perry Correctional Institution, where he went to the medical department about his knee pain.  Plaintiff alleges that Physician's Assistant "Enloe" put in a request for Plaintiff to visit to an orthopedic surgeon on December 20, 2010, but that this consultation was denied.  Plaintiff then alleges that a "Dr. Lewis"

---

[1]This case was automatically referred to the undersigned United States Magistrate Judge for all pretrial proceedings pursuant to the provisions of 28 U.S.C. § 636(b)(1)(A) and (B) and Local Rule 73.02(B)(2)(d) and (e), D.S.C.  The Defendants have filed a motion for summary judgment. As this is a dispositive motion this Report and Recommendation is entered for review by the Court.

[2]In this Circuit, verified complaints by pro se litigants are to be considered as affidavits and may, standing alone, defeat a motion for summary judgment when the allegations contained therein are based on personal knowledge. Williams v. Griffin, 952 F.2d 820, 823 (4th Cir. 1991).



had an x-ray and MRI performed on his knee on February 16, 2011, which revealed that he had a torn medial meniscus , a torn lateral meniscus, and a grade III chondromalacia of the patellar. Plaintiff also alleges that during this period of time, his feet began to give him "excruciating pain" in addition to the knee pain he was already experiencing.

Plaintiff alleges that on March 10, 2011 he went to sick call about his feet, complaining of excruciating pain as well as with a problem with the big toe on his left foot. Plaintiff alleges he asked for paper shoes or medically fitted shoes, but that no application was ever put in. Plaintiff alleges that on May 5, 2011, he had x-rays taken of his feet, which were submitted along with an MRI to be reviewed through the grievance process, but that both Dr. Moore (on July 11, 2011) and the grievance coordinator denied his requested relief. Plaintiff alleges that he was eventually sent to an orthopedic surgeon for treatment of his knee, but that he never received a referral for an examination or diagnosis of his feet. Plaintiff further alleges that the orthopedic clinic refused to operate on his knee. Plaintiff alleges that he filed a grievance, following which the SCDC Medical Review Board reconsidered its position and approved Plaintiff having knee surgery on January 27, 2012. Plaintiff alleges, however, that this surgery was "not a total success".

Plaintiff alleges that the Defendant Dr. Moore has been deliberately indifferent to his serious medical needs, and that the Defendant William Byars, Director of the SCDC, is also liable for failure to take any action to help him. See generally, Verified Complaint.

In support of summary judgment in the case, the Defendant Thomas Moore has submitted an affidavit wherein he attests that he is a licensed physician who was at the time relevant to this lawsuit the Medical Director of the SCDC. Moore attests that, in his capacity as Medical Director, he received consult requests from the Perry Correctional Institution staff to determine



whether, in his professional opinion, Plaintiff had medical issues with his feet that made the issuance of special shoes medically necessary. Moore attests that after reviewing the medical information provided, he determined that special shoes were not medically necessary to treat the Plaintiff's minimal heel spurring or knee complaint. Moore further attests that the x-rays (which he approved) taken of Plaintiff's feet revealed no conditions that warranted the issuance of special shoes as a medical treatment, and that the issues shown in the x-rays were not serious medical needs. However, Plaintiff did have the option of purchasing new shoes at the canteen or requesting SCDC general issue shoes from his prison. With respect to Plaintiff's right knee, Dr. Moore attests that he approved multiple consults with the orthopedic specialists at the Kirkland Correctional Institution, multiple requests for medication that was not part of the SCDC's prescription drug formulary, multiple x-rays of Plaintiff's knee, an MRI of his knee, and that he also approved Plaintiff having arthroscopic surgery on his knee. See generally, Moore Affidavit.

         The Defendants have also submitted an affidavit from Nadine Pridgen, who attests that she is the Director of Medical Records for the SCDC, and that she has attached to her affidavit true and accurate copies of excerpts, kept in the ordinary course of business, of Plaintiff's medical records. See generally, Pridgen Affidavit, with attached exhibit [Medical Records].

         As attachments to his opposition to summary judgment, Plaintiff has submitted copies of numerous documents, including inmate trust fund account reports, copies of various medical records (including another copy of the medical records attached to Pridgen's affidavit), copies of grievance forms, some responses to Plaintiff's discovery requests, and three affidavits of the Plaintiff. In his affidavits, Plaintiff attests that while in the Greenville County Detention Center he was treated for diabetes, a right knee injury, and associated pain by Physician's Assistant Rae, a Dr. Sherman,



a Dr. Joanne Skaggs, and a James Doriety. Plaintiff also attests that on August 16, 2010 he was given a physical by Dr. Ronald Steen, and that he was thereafter examined by the Defendant Dr. Moore on September 15, 2010. Plaintiff attests that during Dr. Moore's examination, Moore applied pressure to Plaintiff's knee, causing pain, and that when Plaintiff grabbed Moore's hand in an attempt to get him to release the pressure off of his knee, Dr. Moore told him to never do that again and that he would make sure that Plaintiff never got any approval for any requests that would come across his desk. Plaintiff further attests that Dr. Moore told him he did not care about his knee and foot pain.

Plaintiff also attests that on March 9, 2011 he was sent to the Kirkland Ortho-Pedic Clinic, where he was examined by "Dr. Whiteside", who gave him some sort of cortisone or steroid injection. Plaintiff attests that when he asked Dr. Whiteside if he was going to offer him an operation, Dr. Whiteside told him "no", that they were only going to give him the injections because there was only one small tear in his knee. Plaintiff attests that he filed a grievance against Dr. Whiteside on March 14, 2011 because (Plaintiff asserts) his MRI results showed he had more extensive injuries that Dr. Whiteside had told him. Plaintiff also attests that he went to the doctor's clinic at the Perry Correctional Institution on April 24, 2012 to consult with Dr. Benjamin Lewis about a rash on his feet and ankles as well as foot pain. Plaintiff attests that Dr. Lewis informed him that the SCDC had a new shoe policy, and that Plaintiff did not meet the qualifications to warrant orthopedic shoes. Plaintiff attests that Lewis also told him that, due to financial problems, the SCDC did not have money for orthopedic shoes, and that they would put him in a wheelchair and push him around before they would approve any medically fitted shoes. With respect to the change in policy, Plaintiff attests that Dr. Lewis told him that because there had been an increase in inmates applying for medically fitted shoes, the State had to come up with policies to deny these requests. See



generally, Plaintiff's Affidavits.

### Discussion

Summary judgment shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law. Rule 56, Fed.R.Civ.P. The moving party has the burden of proving that judgment on the pleadings is appropriate. Temkin v. Frederick County Comm'rs, 945 F.2d 716, 718 (4th Cir. 1991). Once the moving party makes this showing, however, the opposing party must respond to the motion with specific facts showing there is a genuine issue for trial. Baber v. Hosp. Corp. of Am., 977 F.2d 872, 874-75 (4th Cir. 1992). Further, while the Federal Court is charged with liberally construing a complaint filed by a pro se litigant to allow the development of a potentially meritorious case, see Cruz v. Beto, 405 U.S. 319 (1972); Haines v. Kerner, 404 U.S. 519 (1972), the requirement of liberal construction does not mean that the Court can ignore a clear failure in the pleadings to allege facts which set forth a Federal claim, nor can the Court assume the existence of a genuine issue of material fact where none exists. Weller v. Dep't of Social Services, 901 F.2d 387 (4th Cir. 1990). Here, after careful review and consideration of the arguments and evidence presented, the undersigned finds and concludes that the Defendants are entitled to summary judgment in this case.

In order to proceed with a claim for denial of medical care as a *constitutional violation*, Plaintiff must present evidence sufficient to create a genuine issue of fact as to whether any named Defendant was deliberately indifferent to his serious medical needs. Estelle v. Gamble, 429 U.S. 97, 106 (1976); Farmer v. Brennen, 511 U.S. 825, 837 (1994); Sosebee v. Murphy, 797 F.2d 179 (4th Cir. 1986); Wester v. Jones, 554 F.2d 1285 (4th Cir. 1977); Russell v. Sheffer, 528 F.2d 318 (4th

6



Cir. 1975); Belcher v. Oliver, 898 F.2d 32 (4th Cir. 1990). Plaintiff has failed to submit any such

evidence. Rather, the evidence before this Court, including Plaintiff's medical records and Plaintiff's

statements in his own affidavits, shows that Plaintiff has received continuous and ongoing treatment

for his medical complaints. Plaintiff has been regularly seen (not just for the medical complaints

alleged in this lawsuit, but for various other medical problems as well) by nurses, nurse practitioners,

and doctors. He has also received x-rays and MRIs, the results of which were discussed with him,

and he has been treated for his ailments, to include surgery. None of the medical evidence provided

to this Court shows that the Defendants, or any other medical personnel, were deliberately indifferent

to Plaintiff's serious medical needs. Levy v. State of Ill. Dept. of Corrections, No. 96-4705, 1997

WL 112833 (N.D.Ill. March 11, 1997) ["A defendant acts with deliberate indifference only if he or

she 'knows of and disregards' an excessive risk to inmate health or safety.'"], quoting Farmer, 511

U.S. at 837; House v. New Castle County, 824 F.Supp. 477, 485 (D.Md. 1993) [Plaintiff's conclusory

allegations insufficient to maintain claim].

        Plaintiff's complaints concerning the Defendant Moore[3] revolve around his failure to

---

[3]With respect to the Defendant Byars, while public officials such as Byars are subject to monetary damages under § 1983 in their individual capacities, the doctrines of vicarious liability and respondeat superior are not applicable in § 1983 cases. See Vinnedge v. Gibbs, 550 F.2d 926, 927-929 & nn. 1-2 (4th Cir. 1977). There is no evidence, or even any allegations to show, that Byars was responsible for Plaintiff's medical care. Byars is the Director of the SCDC, not a physician, and cannot be held liable for any medical decisions made by Dr. Moore just because Dr. Moore was an employee of the SCDC. Supervisory officials may be held liable in a § 1983 action only for an official policy or custom for which they are responsible and which resulted in illegal action. See generally, Monell v. Dep't of Social Servs., 436 U.S. 658, 694 (1978); Wetherington v. Phillips, 380 F.Supp. 426, 428-429 (E.D.N.C. 1974), aff'd, 526 F.2d 591 (4th Cir. 1975); Joyner v. Abbott Laboratories, 674 F.Supp. 185, 191 (E.D.N.C. 1987); Stubb v. Hunter, 806 F.Supp. 81, 82-83 (D.S.C. 1992); See Slakan v. Porter, 737 F.2d 368, 375-376 (4th Cir. 1984), cert. denied, Reed v. Slakan, 470 U.S. 1035 (1985); Shaw v. Stroud, 13 F.3d 791, 799 (4th Cir. 1994), cert. denied, 115 S.Ct. 67 (1994); Fisher v. Washington Metro Area Transit Authority, 690 F.2d 1133, 1142-1143 (4th Cir.

(continued...)

7



order shoes for him and because of his (apparent) initial refusal to refer him for an orthopedic operation on his knee. However, Moore, a licensed physician, attests that the x-rays of Plaintiff's feet (which he approved) showed that Plaintiff did not warrant the issuance of special shoes as medical treatment, nor does any of the other medical evidence submitted to this Court show that this was required. See Court Docket No. 32-2, pp. 86, 88. Further, the medical evidence, as well as the testimony of Dr. Moore in his affidavit, reflects that Plaintiff was seen and evaluated on numerous occasions for his knee problems, and that Plaintiff was in fact eventually approved for orthopedic surgery.

As a medical professional, Dr. Moore was entitled to evaluate Plaintiff's condition and render a judgment as to the type of care and treatment warranted, and Plaintiff's mere disagreement with Dr. Moore's opinion or diagnoses, without any supporting *medical* evidence, is not a basis for a §1983 deliberate indifference lawsuit. See Wright v. Collins, 766 F.2d 841, 849 (4th Cir. 1985)[Disagreements between an inmate and a physician over the inmate's proper medical care do not state a § 1983 claim absent exceptional circumstances]; Scheckells v. Goord, 423 F.Supp. 2d 342, 348 (S.D.N.Y. 2006) (citing O'Connor v. Pierson, 426 F.3d 187, 202 (2d Cir. 2005) ["Lay people are not qualified to determine...medical fitness, whether physical or mental; that is what

---

³(...continued)
1982) (citing Hall v. Tawney, 621 F.2d 607 (4th Cir. 1980)). No such policy or custom is alleged here, except for perhaps the "policy" alleged by Plaintiff to deny inmates medically fitted shoes due to monetary pressures. However, Plaintiff has presented no evidence (other than his own conclusory statements)to show that Plaintiff was denied access to orthopedic shoes that were medically necessary for purposes of a constitutional claim. See, discussion hereinabove, supra and infra. Byars was entitled to rely on the judgment and decisions made by Dr. Moore and/or the other medical professionals who saw the Plaintiff with respect to Plaintiff's medical care. Cf. Shakka v. Smith, 71 F.3d 162, 167 (4th Cir. 1995) [officials entitled to rely on judgment of medical personnel]; Miltier v. Beorn, 896 F.2d 848, 854 (4th Cir. 1990) [officials entitled to rely on expertise of medical personnel].



independent medical experts are for."]).  Further, with respect to the remainder of the medical care

Plaintiff received from the various nurses, nurse practitioners, and physicians he identifies in his

Complaint and/or affidavits and exhibits in opposition to summary judgment, Dr. Moore was entitled

to rely on the judgment of these other medical professionals, who saw the Plaintiff on a regular basis,

and would therefore not himself be liable for medical decisions made by these other medical

professionals absent some evidence that he [Dr. Moore] knew that these other medical professionals

were being deliberately indifferent to Plaintiff's serious medical needs.  There is no such evidence.

Cf. Shakka, 71 F.3d at 167 [officials entitled to rely on judgment of medical personnel]; Miltier, 896

F.2d at 854 [officials entitled to rely on expertise of medical personnel].

        While Plaintiff may not agree with the extent and nature of the medical care he

received, he cannot simply allege in a conclusory fashion that he did not receive constitutionally

adequate medical care or attention, otherwise provide no supporting evidence, and expect to survive

summary judgment, particularly when the Defendants have submitted medical documents and

evidence, supported by a professional medical opinion, which refute Plaintiff's claims.  Green v.

Senkowski, 100 Fed.Appx. 45 (2d Cir. 2004) (unpublished opinion) [finding that plaintiff's self-

diagnosis without any medical evidence insufficient to defeat summary judgment on deliberate

indifference claim]; Morgan v. Church's Fried Chicken, 829 F.2d 10, 12 (6th Cir. 1987) ["Even

though pro se litigants are held to less stringent pleading standards than attorneys the court is not

required to 'accept as true legal conclusions or unwarranted factual inferences.'"]; Levy, No. 96-

4705, 1997 WL 112833 ["A defendant acts with deliberate indifference only if he or she 'knows of

and disregards' an excessive risk to inmate health or safety.'"].

        Plaintiff may, of course, pursue a claim in state court if he believes that the medical



care provided to him constitutes malpractice. However, that is not the issue before this Court. Estelle v. Gamble, 429 U.S. 97, 106 (1976)["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."]. The evidence before the Court is insufficient to raise a genuine issue of fact as to whether the named Defendants were deliberately indifferent to Plaintiff's serious medical needs, the standard for a constitutional claim, and Plaintiff's federal § 1983 medical claim should therefore be dismissed. See DeShaney v. Winnebago County Dep't of Social Servs., 489 U.S. 189, 200-203 (1989) [§ 1983 does not impose liability for violations of duties of care arising under state law]; Baker v. McClellan, 443 U.S. 137, 146 (1976) [§ 1983 claim does not lie for violation of state law duty of care]; Estelle, 429 U.S. at 106 ["medical malpractice does not become a constitutional violation merely because the victim is a prisoner."].

<u>**Conclusion**</u>

Based on the foregoing, it is recommended that the Defendants' motion for summary judgment be **granted**, and that this case be **dismissed**.

The parties are referred to the Notice Page attached hereto.

_____
Bristow Marchant
United States Magistrate Judge

March 4, 2013
Charleston, South Carolina



**Notice of Right to File Objections to Report and Recommendation**


The parties are advised that they may file specific written objections to this Report and Recommendation with the District Court Judge.  Objections must specifically identify the portions of the Report and Recommendation to which objections are made and the basis for such objections. In the absence of a timely filed objection, a district court need not conduct a de novo review, but instead must "only satisfy itself that there is no clear error on the face of the record in order to accept the recommendation."  *Diamond v. Colonial Life & Acc. Ins. Co.*, 416 F.3d 310 (4th Cir. 2005).


Specific written objections must be filed within fourteen (14) days of the date of service of this Report and Recommendation.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b).  The time calculation of this ten-day period excludes weekends and holidays and provides for an additional three (3) days for filing by mail. Fed. R. Civ. P. 6(a) & (e).  Filing by mail pursuant to Fed. R. Civ. P. 5 may be accomplished by mailing objections to:

Larry W. Propes, Clerk
United States District Court
Post Office Box 835
Charleston, South Carolina 29401

**Failure to timely file specific written objections to this Report and Recommendation will result in waiver of the right to appeal from a judgment of the District Court based upon such Recommendation.**  28 U.S.C. § 636(b)(1); *Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Schronce*, 727 F.2d 91 (4th Cir. 1984); *Wright v. Collins*, 766 F.2d 841 (4th Cir. 1985).

11

